UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| VS. | : | NO. 3:03CR188 (CFD) |
| MICHAEL SPERO | : | DECEMBER 20, 2004 |

### DEFENDANT'S SENTENCING MEMORANDUM

**I.   Introduction and Procedural History**

The defendant generally concurs with the information in the Government's sentencing memorandum, Section on "Introduction and Procedural History" of November 12, 2004.

**II.   Factual Background**

The factual background set forth in the Government's sentencing memorandum is generally accurate but omits certain relevant background information. The victim was believed to be five months short of his sixteenth birthday at the time of the offense. It should be noted, moreover, had the defendant not crossed the state lines and had the victim been 16 years old, as Mr. Spero had believed, no crime would have been committed. The age of consent in Connecticut is 16.

Furthermore, it is implied in the Government's memorandum, but not expressly stated, that the 15½ year old and the defendant mutually entered into a chatroom on the internet which catered to males seeking to meet other males. Prior to the meeting

in Connecticut based upon these instant messages, the Connecticut youth had a fairly good idea that sexual acts would be involved at this meeting.

The Government refers to the defendant and the victim driving to the Grantmoor Motor Lodge in Newington, Connecticut.  It was the young man from Connecticut who suggested this place to the defendant.  The victim and the defendant did engage in anal sexual relations but the penetration was minimal and as soon as the victim requested the defendant cease, the defendant did so.  It was also the defendant's recollection that the victim was not asleep when this occurred as he now claims, but awake and physically suggesting to the defendant that he engage in anal sexual relations.  It should also be pointed out that the Government and the defendant in the Stipulation of Offense conduct made no reference to oral sexual relations and, therefore, the Court should not consider that activity in imposing sentence upon the defendant.

The Government's "factual background" also makes reference to the victim appearing at Bristol Hospital the following day.  Those records, however, do not give any indication that the victim suffered any harm and, strangely, there is no reference to a sexual assault kit or the victim having a rectal examination.  The Government then proceeds to reinform the Court that there were several days of communications between an undercover agent posing as the victim and the defendant over the

2

internet. Those communications are set forth in the pre-sentence report and show that the defendant did have an interest in continued sexual relations with the victim. However, the defendant goes to great length in those statements to assure the victim that he would only be interested in doing so if the victim, whom the defendant believed was 16, was willing to do so.

The Government also somewhat misstates the reference to another boy in the Bristol area who was "14 or 15". The messages speak for themselves, but the interpretation that the defendant recalls was that he had an internet chat with the 14 or 15 year old and that that individual might be someone whom the victim would be interested in meeting. There was certainly nothing in the instant messages to indicate that the defendant had personally met the 14 or 15 year old or had any interest in doing so.

### III.     Sentence Guideline Calculation

The Government has correctly computed the guideline computation but raises some question whether the defendant should receive three points for Acceptance of Responsibility. It concedes that he pleaded guilty and showed remorse, but alludes to the defendant's unwillingness to reveal his total work history. The defendant was unemployed at the time of the offense and had been so unemployed for at least six months. This information was revealed to the probation officer at the initial interview.

The defendant, a medical doctor, had worked as an independent contractor off and on for a number of years. Rather than inaccurately relate his employment history, the defendant, through counsel, may have submitted a letter (Appendix A) in which the probation officer, through a website, could get specific information concerning the defendant's work history. As of the date of this memorandum, the probation officer has indicated that he did not receive such a letter. The undersigned writer has no explanation but suggests that whatever efforts have to be made to procure the information through the website should be done. Should the probation officer not be able to get into the website, other arrangements will immediately be made to provide work history to probation and the Government.

In light of the stipulated guideline computations, it is hard to understand how the exact work history is relevant. Obviously, all information about the defendant's background is somewhat pertinent to the Court's determination as to an appropriate sentence. In light of all the other information the defendant has revealed, which apparently is accurate, the Court should make a finding that he has accepted responsibility and make the appropriate adjustment.

IV.   **Criminal History**

The Government is correct that the defendant's New Jersey case is not fully resolved. Because he has been convicted and not yet sentenced, he should received

4

no more than one criminal history point.  U.S.S.G. Section 4A1.2(a)(4).  An argument also could be made that since the New Jersey activity was taken into consideration in the five point upward adjustment on the defendant's Base Offense Level under Section 4B1.5(b)(1), then it is part of the criminal act for which defendant has been convicted in Federal Court and should not count as any criminal history points.  The word prior sentence is defined as "any sentence previously imposed upon adjudication of guilt...for <u>conduct not part of the instant offense</u>".  Section 4A1.2(a)(1).  [emphasis added]   Since the February 2003 conduct was factored into the Guideline computation's Base Offense Level, it is, indeed, "part of the instant offense".  Therefore, the conviction in New Jersey should count as zero points.  Either way, the defendant is appropriately placed in Criminal History I as the Government concurs.

IV.     **Impact of Blakely**

The effect of the <u>Blakely</u> decision may very well be that upward adjustments not only cannot be determined by a judge but only by a jury, but that the guidelines themselves are invalid.  The defendant did stipulate to applicable guidelines but did so at a time prior to <u>Blakely</u> and before he had any notification that what he was stipulating to may be invalid.  Should the U. S. Supreme Court decision in <u>United States v. Booker</u> _____S.Ct._____2004, W.L. 1713654 result in the total invalidation of the guidelines, the defendant requests the opportunity to be resentenced in

accordance with that opinion.

## V. Departures

### A. Credit for Time in New Jersey

While in federal custody, the defendant was released to law enforcement officers in New Jersey so that he could dispose of the pending New Jersey charges previously alluded to. The defendant spent approximately six months in New Jersey awaiting disposition of the criminal charges in that state. The Bureau of Prisons will not accord him credit for that time since he was not in the custody of that agency. It seems highly inequitable not to credit him on his sentence for that time. First of all, even though he will get credit on the New Jersey sentence, this will effectively not count at all. The five years which he anticipates receiving in New Jersey will be totally subsumed by the expected longer sentence that this court will impose. Thus, the total effective sentence on the New Jersey and Connecticut federal court will be eight years. Had Mr. Spero had the money to post bond in New Jersey, he would effectively have served a sentence of 85 percent of an 8 year sentence, assuming this Court sentences him at the bottom end of the Guideline range. Because he could not post bond on the New Jersey charges, he will serve eight years plus an additional six months.

More importantly, the two sentences, as previously stated, are interrelated. Mr.

Spero received an additional five points on the Base Offense Level under Section 4B1.5 because of the New Jersey crime. 18 U.S.C. §3585(b) requires that a defendant be given "credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - (1) as a result of the offense for which the sentence was imposed." 18 U.S.C. §3583(b)(1). The approximately six months which Mr. Spero spent in New Jersey was "in official detention" and it was prior to the date that this Court will impose sentence. Since the sentence which this Court will impose is at least partly "the result of the offense" based upon his New Jersey conduct, this Court should credit him with whatever sentence it imposes for the time he spent in New Jersey by downwardly departing to that extent.

### B. The Court Should Downwardly Depart Pursuant to Section 5H1.11 For Mr. Spero's Record of Prior Good Works

The pre-sentence report accurately depicts Mr. Spero's efforts to help the victims of the September 11, 2001, attack in New York City. PSR 50 and 52. The Courts have recognized and granted downward departures where a defendant, prior to his conviction, engaged in works that were "above and beyond" customary political and charitable giving. United States v. Serafini, 233 F3d 758 (3d Cir. 2000). See also, United States v. Jones, 158 F3d 492 (10th Cir. 1998); United States v. Woods, 159 F3d 1132 (8th Cir. 1998). The Second Circuit itself has recognized a downward

7

departure in part for community service where the defendant did nothing more than sit on various Boards which were set up to administer charitable programs. United States v. Rioux, 97 F3d 648 (2d Cir. 1996).

In a very dangerous situation, and in an act of humanitarian and patriotic fervor, Mr. Spero spent a week of his life administering health care to people who were attacked by terrorists. It is submitted that very few of the multitude of doctors in the New York area contributed their services as did Mr. Spero. This act in itself should be considered not ordinary and usual and should count for at least some downward departure.

**VI.    Restitution**

The defendant recognizes that restitution under some circumstances is mandatory. To date, other than an allusion in the pre-sentence report, of possible mental health bills incurred by the victim, defendant has seen nothing to indicate the nature of what these bills are or even their amount. At the time of defendant's plea, on March 15, 2004, the Government expressly told the Court that there is either no restitution owing from the defendant or if there was, it would be "minimal". The defendant does not take issue with an order of restitution that would be "minimal". The defendant did, however, only plead guilty upon the assurance, on the record, from the Government that this would be the case. The defendant should not, because

8

of the nature of the plea bargain, be required to pay more than the minimal restitution in light of the Government's remarks at the time he entered his plea. (Appendix B).

### VII.     Supervised Release

The defendant recognizes that as a result of Protect Act, this Court could impose Supervised Release for the balance of his life. The Court should also be aware that because the defendant has committed a sex offense, the degree of invasiveness of supervision for this defendant would be far greater than what is normally seen. The defendant submits that the Court should not impose such an onerous and lengthy Supervised Release. The language is not mandatory, and the Court certainly can impose a much shorter period of Supervised Release. If the defendant adheres to the conditions set forth for a period of five years, it would appear that society is adequately protected, and the defendant is sufficiently punished. Rehabilitation is enhanced if any defendant can see a light at the end of the tunnel and know that sometime he will be free. Lifetime Supervised Release only serves to humiliate the defendant and is counterproductive.

Some of the conditions proposed by the Government for Supervised Release are opposed by this defendant. For example, there is absolutely no need for polygraph examinations, and defendant points out how unreliable these examinations are.

The defendant opposes disclosures to a potential employer of "computer related restrictions".  There are alternative ways to assure protection here, and the defendant will have a hard enough time as it is to find employment because of his age and long period of incarceration.  The purpose of rehabilitation is for the defendant to work and not to interfere with those efforts by scaring off "potential employers".

The defendant opposes searches of his "residence, automobile or work place" for the presence of sexually explicit materials.  The defendant was not convicted of downloading child pornography nor of having any sexual explicit materials.  This condition is totally irrelevant to the nature of his offense and is far more invasive than was necessary considering the nature of his crime.

Additionally, the defendant can see no need for providing the probation officer with financial records, telephone bills, and credit card statements.  Whatever benefit the Government obtains from this information is far outweighed by the invasiveness to the defendant's privacy, and the condition is unrelated to the nature of the crime.  Almost every drug defendant who comes before this Court has used his telephone to further the drug trade, and this condition is not imposed upon these defendants.

The Court should impose conditions of Supervised Release that "involve no greater deprivation of liberty than is necessary for the purposes set forth" in the Supervised Release statute.  18 U.S.C. §3583(b).  U.S.S.G. 5D1.3(b).

Finally, the defendant requests that if this Court intends to impose any special conditions of Supervised Release not set forth in the Government's Sentencing Memorandum, Exhibit A, that the defendant and counsel be given advance notice of these conditions so that he can make an appropriate response.

## VII. Conclusion

For all of the above reasons, the defendant respectfully requests that this Court depart downward to give the defendant credit for time served in New Jersey and further depart downward for his extraordinary community service. Additionally, the defendant requests that he be sentenced at the low end of the Guideline range and be accorded no criminal history points. Furthermore, the defendant requests that the Court order only, if necessary, "minimal" restitution and impose only those special conditions of Supervised Release to which the defendant has stated are reasonably necessary to assure compliance with the law and to protect society and requests that he be confined at an institution close to his family home in southern New Jersey.

Respectfully submitted,

DEFENDANT, MICHAEL SPERO


By:_____
      Richard S. Cramer
      449 Silas Deane Highway
      Wethersfield, CT 06109
      Tel. (860) 257-3500
      Federal Bar No. ct00016
      Email: cramer @ snet.net

### **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was hand-delivered this 21st day of December 2004 to:

John Danaher III
Assistant U. S. Attorney
450 Main Street
Hartford, CT 06103

and faxed this 21st day of December 2004 to:

Joseph Montesi
U. S. Probation Office
157 Church Street
New Haven, CT 06510
Fax (203) 773-2200


_____
Richard S. Cramer