UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | CRIMINAL NO. 3:03CR188(CFD) |
| MICHAEL G. SPERO | : | DECEMBER 22, 2004 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The Government hereby responds to the defendant's memorandum of December 20, 2004, and, in addition, supplements its Sentencing Memorandum of November 12, 2004, with regard to its argument that the defendant cannot withhold employment information from the Court and, simultaneously, seek a reduction in offense level on the basis that he has accepted responsibility.

A. Criminal History

The Government agrees that since the defendant has not been sentenced in New Jersey, he should receive no more than one criminal history point, pursuant to United States Sentencing Guideline Section 4A1.2(a)(4).

B. Downward Departures

1. Time Served in New Jersey

The defendant seeks credit for the time he served in New Jersey to respond to the charges that were pending there prior to his arrest in Connecticut. The defendant overlooks the fact that he requested a postponement of his sentencing before this Court specifically so that he could obtain whatever advantage might be available to him by returning to New Jersey to respond to those

charges. The defendant took this step on advice of counsel and signed a waiver (which is on file), making clear that the transfer was knowing and voluntary. He appeared in open Court and confirmed that he was seeking this Court's permission to effect the transfer. The Court engaged in a careful colloquy with the defendant, ensuring that the transfer was voluntary.[1] Thus, the defendant, having knowingly requested the transfer to New Jersey in order to facilitate the resolution of the charges against him, cannot now complain of a situation that he himself created for his own benefit. The defendant cites to no authority in support of his position.

This issue is governed by 18 U.S.C. § 3742(e)(3)(B)(ii), which refers to 18 U.S.C. § 3553(b)(2)(A)(ii), limiting the grounds available for this defendant to seek downward departure. The defendant is correct that 18 U.S.C. § 3585(b) operates in a manner that will not result in the Bureau of Prisons crediting the defendant for the six months that he was in custody in New Jersey. However, the defendant does not identify that aspect of 18 U.S.C. 3553(b)(2)(A)(ii) that supports his motion for downward departure. In fact, it appears that Section 3553(b)(2) bars downward departures for the reasons advanced by the defendant. That section provides that, for offenses that include violations of 18 U.S.C. § 2423(b)(which is included in Chapter 117), a downward departure is only available if there is a mitigating circumstance of a kind or to a degree that "(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28 . . ." and "has not been taken into consideration by the Sentencing Commission in formulating the guidelines" and

---

[1] The undersigned counsel was not available when the defendant appeared in Court for the waiver proceeding, but has confirmed, with the Assistant United States Attorney who was present, that the representations in the body of this memorandum, on this topic, are accurate.

"should result in a sentence different from that described . . . ."

Sentencing Guidelines Section 5K2.0 provides the only grounds that have been "affirmatively and specifically identified" as available bases for downward departure. Sentencing Guidelines Section 5K2.0(b). This section, which became effective on April 30, 2003 (two months prior to the offense of conviction) makes clear, in the "Background" discussion, that this provision reaffirmed that "circumstances warranting departure should be rare." There does not appear to be any provision anywhere in Sentencing Guideline Section 5K2 that permits downward departure in order to give credit for time served in connection with another offense or for "good works." Thus, there do not appear to be any lawful bases for a downward departure on the grounds advanced by the defendant.

However, the Government submits that there is no need to conduct an analysis as to whether there is authority for the relief that the defendant seeks. If this defendant is to receive a concurrent sentence in New Jersey, as he indicates he will, Defendant's Memorandum at 6, he will have received a "free pass" from that jurisdiction for the sexual assault that he committed there in early 2003. This Court, therefore, should not exercise any discretion it may have to depart downward in order to credit the defendant for the time served in New Jersey in 2004. See United States v. Fermin, 252 F.3d 102, 111-12 (2d Cir. 2001). The Government opposes any downward departure intended to, in effect, remedy the alleged "inequity."

2. Prior Good Works

The defendant also seeks downward departure for "prior good works," citing to his volunteer efforts in New York City following the terrorist attacks in September 2001. He compares this effort to the situation in *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996), asserting that the defendant in that case merely sat on "various boards" that administered some charities. Defendant's

3

Memorandum at 8.  As was discussed, <u>supra</u>, there does not appear to be any authority for a downward departure on the grounds of "good works" in the context of a conviction for violating 18 U.S.C. § 2423(b).  However, even if the Court were to consider a "good works" downward departure, *Rioux* offers little support to this defendant.

In *Rioux*, the Court of Appeals recognized that "civic, charitable, and public service and similar prior 'good works are not ordinarily relevant' in determining whether the defendant should receive a downward departure." 97 F.3d at 663 (quoting U.S.S.G. § 5H1.11).  The *Rioux* Court noted that many of that defendant's public acts of charity were "not worthy of commendation" but also acknowledged that the defendant had participated to a large degree in legitimate fund raising efforts.  In particular, the Court recognized the money that Rioux had raised for the Kidney Foundation. *Id.*

In *Rioux*, the downward departure was based not only on the defendant's public works but also on the defendant's significant medical condition that required regular monitoring, medication, and surgery.  Here, by contrast, the defendant has no similarly debilitating ailments.  In addition, the single charitable act he describes is hardly extraordinary.  Here, as in *Rioux*, the defendant's "public act[] of charity" is not so extraordinary as to warrant a downward departure.  Further, *Rioux* was decided under the deferential abuse of discretion, and in that case the Second Circuit found that a departure based *in part* on significant public works was not an abuse of discretion.  97 F.3d at 663.

As was discussed, <u>infra</u>, 18 U.S.C. § 3742(e) will govern this case.  That section requires *de novo* review on appeal and, accordingly, the vitality of <u>Rioux</u>, if presented to the Second Circuit today, is questionable. Finally, the Government hereby restates the position set forth in the preceding section: this defendant, under the circumstances of this case, does not present a situation that

warrants a downward departure.

In the event that the Court is inclined to consider a downward departure, or if the Court sentences the defendant to a particular point within a range that exceeds 24 months, the Government notes that 18 U.S.C. § 3553(c) calls upon the Court to list the reasons for the sentence that is imposed.[2]

C. Acceptance of Responsibility

As explained in the Government's November 12, 2004, Memorandum, the defendant's refusal to provide any information regarding his work history during the period of 1998-2002 frees the Government from its obligation to recommend a reduction in offense level for acceptance of responsibility. See Government's November 12, 2004, Memorandum at 4-5. The Government hereby provides additional authority for the proposition that this Court should not, regardless of any recommendation that the Government might or might not make, reduce the defendant's offense level calculation for having accepted responsibility.

The Presentence Investigation Report ("PSR") includes, correctly, repeated references to this Court's responsibility to decide whether certain monetary penalties should be assessed in this case. PSR ¶¶ 4, 68 (defendant's fine range is $15,000 to $150,000); PSR ¶ 67 (the defendant can be fined up to $250,000); PSR ¶ 69 (the costs of the defendant's incarceration). Yet, the defendant has provided little in the way of financial information. (PSR ¶ 59; May 4, 2004 Financial Statement claiming no income and no assets).

Accurate information regarding the defendant's employment history during the four year

---

[2] If the defendant receives credit for acceptance of responsibility, the applicable range is 97-121 months, and so does not exceed 24 months. But see n.5 infra.

period would, at least, permit the Court to determine whether the defendant, in truth, has no assets.[3] However, the defendant has elected to withhold that information in order to help keep the fact of his conviction a secret from the medical community. PSR ¶ 57.

The Government has learned that, by letter dated May 17, 2004, the defendant may have provided the Office of Probation with a website that would purportedly outline the defendant's past work history. However, an examination of that website, www.npdb-hipdb.com, does not appear to be a resource that will provide the necessary information. The website provided by the defendant provides access to two data bases. The first, the National Practitioner Data Bank, states, in the introduction to its Guidebook, that it makes "certain information concerning medical malpractice payments and adverse actions available to eligible entities and individuals." NPDB Guidebook at A-3 (copy attached as Exhibit A). The Healthcare Integrity and Protection Data Bank indicates, in the introduction to its Guidebook, that it includes information pertaining to "final adverse actions against health care practitioners, providers and suppliers." HIPDB Guidebook at A-1 (copy attached as Exhibit B). Thus, the website does not appear to answer the questions that the defendant, himself, should be able to answer easily and which he has refused to answer.

As a general matter, there is no doubt that this Court should not acquiesce in the defendant's wish to keep this conviction a secret from the medical community, or any community.[4] In the

---

[3] The defendant asserts that he owned a 1990 Acura Integra which he transferred for no financial gain. Financial Statement at 5. He did not indicate to whom the car was transferred. Further, he did not (according to his response in the form) produce any of the Income Tax Returns called for in the form. Id.

[4] The defendant has already affirmed that he is fully aware that his conviction may result in registration as a sex offender, and that the Government has the right to notify any state or federal agency by whom the defendant is licensed or does business. Plea Agreement at 6.

specific context of deciding whether to grant the defendant a reduction for acceptance of responsibility, the primary focus should be on the question of whether the defendant has met his burden to establish that he is entitled to the reduction. United States v. McIntosh, 198 F.3d 995, 998 (7th Cir. 2000). See also United States v. Ibanez, 924 F.2d 427, 428 (2d Cir. 1991)(defendant would not discuss case with probation officer); United States v. Harris, 13 F.3d 555, 557 (2d Cir. 1994)(defendant's conduct inconsistent with acceptance of responsibility). Here, the defendant has not fully met his burden. He has met with the probation officer, and he has discussed his personal background in a manner that may be of benefit to him, but he has not provided this Court with sufficient financial information to permit this Court to discharge its responsibilities. Such conduct is a sufficient basis to deny credit for acceptance of responsibility. See United States v. Cross, 900 F.2d 66, 69 (6th Cir. 1990).

To date, the defendant has not produced sufficient information regarding his employment history to permit this Court to conclude that he has truly accepted responsibility for his conduct. He has not produced appropriate income tax returns. For the foregoing reasons, this Court should decline to credit the defendant for acceptance of responsibility, and his offense level calculation should be adjusted, accordingly.[5]

D. Restitution

The Government has not yet received bills from the victim that set forth the precise expenses that should be included in an order of restitution, but the Government is of the understanding that,

---

[5] The defendant's offense level is currently calculated at 30. PSR paras. 29, 62. If he does not receive credit for acceptance of responsibility, his offense level calculation will be at 33, with an accompanying sentencing guideline range of 135-168 months.

as was indicated at the guilty plea proceeding, such bills are, to date, in the range of several hundred dollars or less. However, this Court is not bound by the Government's understanding as to the scope of restitution. The Government's position was based on the state of the record in March 2004, when the defendant pleaded guilty. If the victim now produces expenses that he had not produced (or indeed, perhaps even incurred) on or before March 2004, the order of restitution should include the expenses that are within the terms of the rider regarding restitution that was attached to the plea agreement.

### E. Supervised Release

The defendant opposes the Government's proposed term of supervised release, claiming that a lifetime of supervised release would "humiliate" the defendant. The Government does not seek lifetime supervised release to humiliate the defendant, but rather seeks such supervision to protect other children from a defendant who: was arrested for sexually assaulting a child; was released on bail; who then contacted and sexually assaulted another child; and who made arrangements, one month later, to return to Connecticut and repeat the conduct. Clearly this defendant sees himself as being above the law. If this Court were to order lifetime supervised release, and the defendant were to eventually establish that he had successfully rehabilitated himself, he would always have available the option of seeking to have his supervised release terminated, pursuant to 18 U.S.C. § 3583(e).

The defendant also opposes several of the Government's proposed special conditions of supervised release. The Government recognizes that, in the plea agreement, it recommended four specific conditions of supervised release. The defendant agreed, reciprocally, not to oppose those conditions. Plea Agreement at 2. The Government now understands that the defendant believes that the Government is barred from advocating any additional conditions of supervised release. The

Government did not, however, promise not to request any additional conditions. It simply articulated those conditions that the defendant promised not to oppose. If the Court disagrees, or if the Court finds the plea agreement to be ambiguous on this issue, then the Government understands that it cannot seek any additional special conditions.[6] United States v. Lawlor, 168 F.3d 633, 636 (2d Cir. 1999)(ambiguities in a plea agreement are resolved against the Government). However, if the Court concludes that the Government is not barred from advocating additional conditions of supervised release, then the Government stands behind its request for additional special conditions, to include polygraph examinations at appropriate times. Such test results are not admissible in court, but they serve as a useful investigative tool. Similarly, the computer restrictions sought by the Government, the ability of a Probation Officer to search the defendant's residence, automobile or workplace for sexually explicit materials, and the production of the defendant's records relating to telephone calls and financial matters are all designed to limit this defendant's opportunities to continue the course of conduct that brought him before this Court. The Government has no objection to a provision that the appropriate Probation Officer be required to consult with the Court prior to exercising any of the

---

[6]The Court, of course, is not barred, and cannot be barred, from imposing, *sua sponte,* any Special Conditions that it believes are appropriate.  18 U.S.C. Section 3583(d).

authority described in the defendant's memorandum at 9-10.

>Respectfully submitted,
>
>KEVIN J. O'CONNOR
>UNITED STATES ATTORNEY
>
>
>JOHN A. DANAHER III
>ASSISTANT UNITED STATES ATTORNEY
>Federal Bar No. ct05101
>450 Main Street, Rm. 328
>Hartford, CT   06103
>(860) 947-1101

### CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed and faxed this 22nd day of December, 2004, to the following:

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109-2120

>_____
>JOHN A. DANAHER III
>ASSISTANT UNITED STATES ATTORNEY