UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| v. | : | CRIMINAL NO. 3:03CR188(CFD) |
| MICHAEL G. SPERO | : | DECEMBER 29, 2004 |

**GOVERNMENT'S SECOND SUPPLEMENTAL SENTENCING MEMORANDUM**

At a preliminary sentencing hearing held on December 23, 2004, in the above-referenced matter, this Court directed the parties to provide a supplemental memorandum on four separate topics:

1. The appropriate duration of supervised release;

2. A special condition of supervised release relating to the defendant's access to the internet;

3. The relationship of sentencing Guidelines Section 5G1.3 and Application Note 2 to the defendant's request for credit for time served while awaiting disposition of charges pending against him in the State of New Jersey; and

4. Whether the defendant has been, or should be, tested for the presence of sexually transmitted diseases.

The Government will address each of these issues in this supplemental sentencing memorandum.

    1.    <u>The Duration of Supervised Release</u>

In this case, the Government has requested that the defendant be sentenced to a period of supervised release, following his release from imprisonment, for the remainder of his life. This Court requested an analysis of this issue in relationship to the decision in <u>United States v. Mora</u>, 22 F.3d 409 (2d Cir. 1994). The Court particularly asked the parties to address the issue of recidivism in this context.

In the district court decision in <u>Mora</u>, the court sentenced the defendant, a narcotics trafficker, to 84 months imprisonment and departed upward in the term of supervised release because the defendant had committed the second narcotics offense within two years of a prior offense. The district court ultimately sentenced the defendant to a lifetime of supervised release. <u>Id.</u> at 411. The United States Court of Appeals for the Second Circuit found that a lifetime term of supervised release was procedurally valid. <u>Id.</u> at 412. The Court found that a departure from a Guideline range is permissible when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." <u>Id.</u> at 413. Again, the Second Circuit found that the district court was entitled to depart from the Guidelines range because recidivism in sentencing was not fully dealt with through the criminal history categories. <u>Id.</u> However, the Second Circuit found that a lifetime term of supervised release, for defendant Mora, personally, was unreasonable because of the limited factual findings by the district court. In <u>Mora</u>, the defendant had been arrested for engaging in drug trafficking a year and one-half after having served a four-year prison term for importing heroin. The Second Circuit agreed that "this evidence alone suggests a high probability of future recidivism on Mora's part." <u>Id.</u> However, in the absence of findings that distinguished Mora from any other

recidivist, the Second Circuit found that a lifetime term of supervised release was not warranted. The Court found that such reasons, standing alone, could justify an upward departure to a life term in all cases of recent recidivism by drug offenders. Id. at 413.

The situation presented in this case is different in a number of respects than the case presented in Mora. In this case, Sentencing Guidelines Section 5D1.2 prescribes that the term of supervised release for a defendant convicted of a B felony is to be at least three years but not more than five years. Section 5D1.2(a)(1). However, § 5D1.2(c), a policy statement, indicates as follows: "If the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended." Application Note 1 provides that a "sex offense" includes an offense under 18 U.S.C. Chapter 117, a chapter that includes the offense in this case (18 U.S.C. § 2423(b)). Thus, unlike Mora, this case does not involve a drug trafficking offense but, instead, a sex offense, and the district court is not asked to depart from a Sentencing Guideline range because there is an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission. On the contrary, the Sentencing Commission recommends a lifetime of supervised release for this type of sex offense.

A general discussion of the topic of recidivism appears in Small, Who Are the People In Your Neighborhood? Due Process, Public Protection, And Sex Offender Notification Laws, 74 N.Y.U. L Rev. 1451 (1999). In the Law Review Article, the author criticized the fact that on occasion "sex crimes" and "sex offenders" are looked at as single categories. Id. at 1453. The author noted that not all sex offenders have high recidivism rates. The author noted that the majority of incarcerated sex offenders (more than 91 percent) were "one-time offenders" who were "much more likely to victimize non-strangers while repeat offenders were more likely to victimize strangers."

Id. at 1457. The author concluded, from those statistics, that "the individuals posing the greatest risk to the community (multiple offenders who prey on strangers) constitute a very small percentage of all violent sex offenders." Id. The author further noted studies that find that "sexual predators who victimize children were more than twice as likely to have multiple victims as a sex offender who targets adults." Id.

The empirical studies are fully consistent with the facts of this particular case. In this case, the defendant did not victimize children who were known to him; he identified children on the internet (in the instant case, misrepresenting himself as a 23 year old medical student) and so fit the profile of the most dangerous offender - a multiple offender who preys on strangers. More importantly, this defendant, unlike Mora, had not been convicted, served a sentence, and then returned to his former criminal path. Instead, this defendant was arrested for a sexual offense, and had only been recently released from custody on bail, when he identified the victim in this case over the internet, scheduled a meeting, and then assaulted the victim. Further, the internet traffic that has been made a part of the record indicates that this defendant had been in communication with another Connecticut child, apparently of the age of either 14 or 15. This defendant is more than a recidivist; he is virtually unstoppable. In both the New Jersey and the Connecticut cases, the defendant traveled with a "sex kit" that suggests, at least, a carefully thought out modus operandi or, at worst, a pattern of behavior that has only recently been detected.

The Government asks the Court, for the reasons stated, to sentence this defendant to a lifetime of supervised release pursuant to the policy statement set forth in Sentencing Guidelines Section 5D1.2(c).

2.  <u>Special Condition of Supervised Release</u>

The Government requested, inter alia, that the Court include as a special condition of supervised release, that "the defendant shall allow officers of the United States Office of Probation to inspect, at their discretion, any computer to which the defendant has access." This Court asked the parties to examine that requested special condition of supervised release in light of <u>United States v. Sofsky</u>, 287 F.3d 122 (2d Cir. 2002).

In <u>Sofsky</u>, the district court imposed a special condition that prohibited the defendant from accessing "a computer, the internet, or bulletin board systems at any time, unless approved by the Probation Officer." The Second Circuit found that condition, an absolute bar on computers by a sex offender, would be similar to an absolute prohibition on the use of the mails by a defendant convicted of mail fraud. <u>Id.</u> at 126. The court did agree that a condition prohibiting the defendant from accessing the internet without his probation officer's approval was reasonably related to the purposes of his sentencing, in light of the nature of his offense. <u>Id.</u> at 126. The court suggested that instead of a complete prohibition on computer use, a more focused restriction would be appropriate. The court suggested that an acceptable alternative would be a special condition that provided for "unannounced inspections of Sofsky's premises and examination of materials stored on his hard drive or removable disks." <u>Id.</u>

<u>Sofsky</u> was revisited in the case of <u>United States v. Balon</u>, 384 F.3d 38 (2d Cir. 2004), in which the court reviewed a special condition of supervised release that required a defendant to provide the U.S. Probation Office of advance notification of any computers, automated services, or connected devices, that he would use during the term of supervision. The U.S. Probation Office was authorized to install any application necessary on computers or connected devices to randomly

monitor the defendant's computer usage, and the defendant was directed to consent to unannounced examinations of any computer equipment that he owned or used.

The Government notes, first, that the condition it requested is not the blanket prohibition that was rejected in Sofsky. On the contrary, the Government requested that the defendant be subject to monitoring, as found appropriate by the Office of Probation, during the course of his supervised release. Such a condition was approved in Sofsky. The Government did not request a more specific method of monitoring of the defendant's computer usage because, as it noted in oral argument on December 23, 2004, it is impossible to predict the state of technology when the defendant is released from imprisonment. The Balon Court noted this same fact, concluding that "the technology that holds the key to whether the special condition in this case involves a greater deprivation of liberty than reasonably necessary is constantly and rapidly changing." Id. at 45. Thus, the Second Circuit dismissed the challenge to the conditions imposed in Balon, directing the district court to reconsider, at the instance of the Government or Balon, "the special conditions regarding monitoring of Balon's computer at a time closer to Balon's term of supervised release." Id. at 47.[1]

Thus, the Government's requested special condition of supervised release does not violate the restrictions of Sofsky but, instead, simply permits officers of the United States Office of Probation to inspect, at their discretion, any computer to which the defendant has access after he is released from custody. This condition is not only within the framework of Balon, it is within the framework of Sofsky as well.

---

[1] The court distinguished Sofsky by noting that the defendant, in Balon, was not subject to an absolute ban on his use of a computer. Id. at 48.

3.  Application of Section 5G1.3

The defendant seeks credit for a six month period that he was in New Jersey state custody, awaiting the disposition of that case. In the course of those six months, the defendant entered a guilty plea, but was not finally sentenced on the offense of conviction. He has been returned to this District for sentencing for the sexual assault that post-dated the sexual assault in New Jersey.

The question presented at oral argument is whether Sentencing Guidelines Section 5G1.3(b), and accompanying Application Note 2, call for credit for the six months that the defendant has been in New Jersey state custody.

On its face, Section 5G1.3(b) does not appear to apply, because the defendant has not yet been sentenced for the New Jersey offense. Although the parties have assurance that the New Jersey sentence, when imposed, will be concurrent to the federal sentence, that event has not yet taken place.

Application Note 2 is contingent upon a sentence being imposed pursuant to Section 5G1.3(b). Since the sentence in this case will not be pursuant to subsection (b) of Section 5G1.3, Application Note 2 does not apply. The example given in Application Note 2 is illustrative in that it deals with a situation in which the defendant is convicted federally of an offense that is the same as a state offense for which he had been convicted and sentenced.

In this case, the defendant has not been convicted of the same offense of conviction that occurred in New Jersey. The New Jersey offense, although its existence did serve to increase the defendant's offense level in this case, was not "the same" offense that resulted in the conviction in this case. It was an assault on a different child at a different time and at a different location. Thus, subsection (b) does not apply. See United States v. Fermin, 252 F.3d 102, 107-108 (2d Cir. 2001).

Thus, Sentencing Guidelines Section 5G1.3, Application Note 2, offers no relief to this defendant.

    4.    <u>Test for Sexually Transmitted Diseases</u>

The Government has been advised by the Office of Probation that it will query the Department of Corrections to determine if this defendant has been examined for the presence of sexually transmitted diseases. Nonetheless, the Government has orally requested the defendant, through his counsel, if he will submit to testing for sexually transmitted diseases. It is in the defendant's own interest to know if he carries any such disease, and it would be consistent with his claim that he is truly remorseful for his actions if he were to take the steps necessary to provide this information to the victim and the victim's family.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY


    JOHN A. DANAHER III
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. ct05101
    450 Main Street, Rm. 328
    Hartford, CT   06103
    (860) 947-1101

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the foregoing has been mailed this 29th day of December, 2004, to the following:

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109-2120

_____
JOHN A. DANAHER III
ASSISTANT UNITED STATES ATTORNEY