FILED

UNITED STATES DISTRICT COURT

2005 JAN -5 P 2: 32

DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES OF AMERICA          :

VS.                               :          NO. 3:03CR188 (CFD)

MICHAEL SPERO                     :          JANUARY 4, 2005

### DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The defendant is submitting this sentencing memorandum to supplement the

previous sentencing memorandum dated December 20, 2004. The purpose of this

memorandum is to augment and not replace arguments made therein and to expand

on certain issues raised by the Court and prosecution at the sentencing hearing of

December 23, 2004.

**I.**     **Conditions of Supervised Release**

The Government has proposed in its sentencing memorandum of November

12, 2004, certain conditions of supervised release which it is requesting the Court to

adopt. It is also, through stipulation of the parties, proposed other or related

supervised release conditions in the pre-trial agreement signed by the parties. As

stated in the defendant's previous sentencing memorandum, if the Court should

determine that additional conditions of supervised release, other than mandatory

conditions, are required, the defendant should receive advance notice of these

-1-

conditions in order to respond and to afford him due process of law.

### A.   **Computer Use**

The Government in its sentencing memorandum, Exhibit A, does not suggest any restrictions on the defendant's use of a computer other than the right of the probation officer to inspect it.  In the plea agreement, the defendant has agreed to a condition that he will not make use of internet "chat rooms involving children under the age of 18, nor will the defendant access websites containing illegal pornographic content".   Pre-Sentence Agreement, p. 2.  The Court, has however, raised the issue of computer restrictions by directing all parties to the case of United States v. Sofsky, 287 F3d 122 (2d Cir. 2002).

The Sofsky case, supra, as have many other cases involving sex offenders, involved the downloading of child pornography.  Obviously, in these type of cases, the computer is the essence of the crime and the very vehicle which produces the contraband and criminal documents.  The essence of Mr. Spero's case, however, was the travel to another state for the purpose of having sexual relations with a minor.  Thus, the defendant asks the Court not to impose the more restrictive conditions of Sofsky but simply those set forth in the plea agreement to which the defendant and the Government agreed. As Judge Newman wrote in the Sofsky decision, the conditions of supervised release must be "reasonably related" to several of the

-2-

statutory factors governing selection of sentences and they must involve "no greater deprivation of liberty than is necessary for several statutory purposes of sentencing". United States v. Sofsky at 126 supra, U.S.S.G. §5D1.3(b).  As the Sofsky decision points out, to verify that the defendant is not abusing his computer or any computer to which he has access, the Government can utilize a sting operation as they originally did in this particular case.  United States v. Sofsky at 127 supra.  A condition of supervised release that denies the defendant access to the internet or use of computers will violate defendant's First Amendment rights and be unnecessary to protect society.  United States v. Scott, 316 F3d 733 (7th Cir. 2003).

As a recommended condition of supervised release, the Sentencing Commission, as of November 2004, amended 5D1.3(d)(7) by recommending a condition limiting the defendant's use of a computer.  U.S.S.G. §5D1.3(d).  This condition, however, was added subsequent to the defendant's commission of the offense and is inapplicable to the defendant's situation.  U.S.S.G. Appendix C, Amendment 664.  The Court must apply supervised release conditions in effect at the time of the offense.  United States v. Smith, 354 F3d 171 (2d Cir. 2003).

The Court should not impose any non-mandatory conditions other than those set forth in the plea agreement.  At this time, as the Second Circuit has recognized, with the advance of technology, conditions may be available upon the defendant's

-3-

release from confinement which will be less intrusive than other alternatives the Court might be considering.  United States v. Balon, 384 F3d 38, 47 (2d Cir. 2004).  Thus, this Court can reconsider the degree of intrusiveness into the defendant's computer use at some time just prior to his release.  The defendant should be present and allowed to respond at that time.

### B.    Polygraph Examinations

The defendant does not see the need for polygraph examinations and any argument that the Government may make will not differentiate this defendant from any other defendant placed upon supervised release.  Furthermore, as the U. S. Supreme Court has said "there is simply no consensus that polygraph evidence is reliable".  United States v. Scheffer, 523 U.S. 303, 309 (1998).  If the Government wants to use this technique, it seems incumbent upon it to present evidence that polygraph examinations are somehow more reliable than they were in 1998 when the U. S. Supreme Court considered this issue.  United States v. York, 357 F3d 14, 23 (1st Cir. 2004).  Furthermore, the proposed polygraph exam supervised release requirement is vague and leaves too much discretion in the hands of the probation officer.  United States v. Melendez-Santana, 353 F3d 93 (1st Cir. 2003) contra cited in United States v. York, supra at 21-22.  The probation officer is left to his complete discretion, under the Government's proposal, as to when and where these polygraph examinations

-4-

should occur.  If the Court does find polygraph examinations are necessary, it should remove that much discretion from the hands of probation.

Furthermore, to allay the fears of the defendant concerning these examinations, certain other conditions should be included in this requirement if the Court deems it necessary over the defendant's objection.  First, it should be made clear that the Court will not violate his supervised release if he "fails" any question on the examination.  United States v. York, supra at 23.  This is because, as previously noted, the polygraphic device has been construed by all courts to be unreliable.  Second, the defendant should be told in the written judgment that he can refuse to answer any question posed by the probation officer in a polygraph examination if he fears that it might incriminate him for crimes other than that for which he has been convicted.  Valid exercises of the Fifth Amendment should not result in a violation of supervised release.  United States v. York, supra at 25.  If the prosecution or probation has some issue with the validity of the exercise of the Fifth Amendment privilege, the matter can be brought before this Court.  Supra at 25.  See also, United States v. Lee, 315 F3d 206, 211 (3rd Cir. 2003).  Furthermore, the Court should state on its order that the questions posed must relate to the supervised monitoring and the treatment of the defendant.  United States v. Lee at 215 supra.

### C.    Third Party Disclosure

The Government seeks to require the defendant to be compelled by his probation officer to notify employers and others including "other interested parties" of the computer restrictions.  Gov't. Exhibit A. Essentially, he is expected to advise employers and potential employers of the heinous nature of his offense and, effectively, be terminated.  It is ironic that the Government expects the defendant to work, and at the same time proposes a condition which almost surely guarantees his employment termination.  Secondly, the word "interested party" is so vague as to give no guidance to either probation or Mr. Spero  whom should be notified.

This proposed condition is overly broad.  There is no indication that the defendant will work at a job where he will have access to a computer.  Thus, it seems unnecessary for the defendant to be required to notify the employer of the restrictions if he would not be using a computer.  This is another example of a proposal which runs afoul of 18 U.S.C. §3583(b)(2).  Any supervised release condition should be "no greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release.  Supra.  As a recommended condition, the guidelines suggest that "the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notification..." §5D1.3(c)(13).   But it is not the

-6-

defendant's criminal record or personal history that the Government is requesting to be disseminated in Exhibit A but a restriction on computers which is not countenanced anywhere in Section (c) of 5D1.3. If the Court feels compelled, over the defendant's strenuous objection, to impose this condition, it should also include a provision that if the defendant strongly objects, then an opportunity should be heard be heard before the Court for the defendant to explain why the employer should not be notified. United States v. Ritter, 118 F3d 502, 506 n4 (6th Cir. 1997).

The Courts have recognized the very argument which Mr. Spero is making that notification to employers destroys the opportunity for the defendant, coming out of prison, to find meaningful work. United States v. Schechter, 13 F3d 1117, 1119 (7th Cir. 1994). Additionally, the Court should add a restriction that notification is not required if the defendant is an independent contractor as opposed to being in an employee/employer relationship. Supra at 1119.

It must be remembered that this defendant was not convicted of a drug offense or any crime involving dishonesty or embezzlement which could adversely affect an employer. At least one court has held that restrictions such as this cannot be imposed unless the court can find authorization under §5F1.5 (occupational restrictions). United States v. Britt, 332 F3d 1229, 1233 (9th Cir. 2003). All of Mr. Spero's activities on the computer stem from a home computer at his parents' house. There is nothing

-7-

n the history of Mr. Spero's cases here or in New Jersey to lead a court to believe that in working in a business in the future, Mr. Spero would "engage in unlawful conduct similar to that for which he was convicted". United States v. Britt, supra quoting U.S.S.G. §5F1.5(a)(2).

An additional concern about the proposed third party notification is that it apparently leaves the probation office the discretion whether or not an employer or "other interested party" should be notified.  The Second Circuit has held that the Court and not probation officers should determine if an employer need be notified.  United States v. Peterson, 248 F3d 79, 86 (2d Cir. 2001).

**D.    Access to the Defendant's Computer**

The defendant has no problem in principal with allowing probation to access his computer since this computer may be at the defendant's father's home where the defendant will live upon his release.  The only qualification is that the probation cannot enter at any time without notice to inspect the computer.  It would appear that with the advance of technology, that the monitoring and access to the computer can be done outside the premises in the very near future with the installation of some kind of mechanism.  United States v. Balon, 384 F3d 38 (2d Cir. 2004).  The request for access to the defendant's computer is another condition to supervised release that should be deferred until shortly before the defendant's release from confinement so

-8-

that the Court can determine, at that time, the technological advances which would assure the protection of the public in circumstances of this case. <u>United States v. Balon</u>, supra.

### E.    <u>Search of the Defendant's Residence and Work Place</u>

For the same reasons earlier stated, searching the defendant's work place if he is employed by an employer or independent contractor will necessarily result in the termination of his job. The Court should not condone, for reasons previously stated, this condition. The Government's proposal, Exhibit A, speaks about a search for "sexually explicit material". The Court is again reminded that the defendant was not convicted of possession of child pornography nor is there any indication in any of the discovery materials that Mr. Spero had, ever had, or intended to possess "sexually explicit materials", whatever that term means. This condition is not reasonably related to the defendant's offense conduct and is unnecessarily intrusive in the defendant's limited privacy rights. Furthermore, the condition implies that the defendant should not have "sexually explicit materials". This phrase is too vague and does not provide direction to either the probation office or the defendant as to what he is prohibited from possessing. <u>United States v. Guagliardo</u>, 278 F3d 868, 872 (9th Cir.) cert. denied 35 S.Ct. 515 (2002). See also, <u>United States v. Loy</u>, 237 F3d 251, 263 (3rd Cir. 2001).

In both the New Jersey case and the present case, no contraband or evidence of the defendant's crime was found in his home or work place. No contraband was found in the defendant's automobile. Arguably, evidence of the crime was found therein. Furthermore, it is the defendant's present intention to live with his parents in New Jersey upon his release from confinement. The search of the defendant's home would necessarily entail the search of the parents' home. In short, these conditions are not reasonably related to the offense he has committed. This will unduly restrict the defendant in no way that is necessary to protect the public.

If the Court feels compelled to impose a variation of this condition, it should at least prohibit the probation officer from conducting the search unless he has reasonable suspicion that evidence of a violation of conditions of release can be found in the places mentioned. United States v. Guagliardo, id at 872 citing United States v. Knights, 534 U.S. 112 (2001); United States v. Sofsky, id at 124. Furthermore, the Court, if it includes this condition, should make it crystal clear to the probation officer that he does not have the authority to search other people on the premises. United States v. Padilla-Galanza, 351 F3d 594, 601 (1st Cir. 2003).

F.    **Taxes and Financial Records, Telephone Bills and Credit Card Statements**

The defendant objects to this condition. Again, it was not included in the original proposal of the Government in the plea agreement and, thus, the Government

-10-

has breached the plea agreement and the Court should not be oblivious to this type of violation. The fact that the Court might impose this condition regardless of the Government's breach does not obviate the pernicious effect of what the Government has done by submitting Exhibit A to its sentencing memorandum after agreeing to other conditions in the plea agreement.

This condition about financial records has some validity in cases where there is extensive restitution required. The defendant's restitution requirement, as stated by the Government at the time of his plea, will be "minimal". Plea transcript attached to defendant's original sentencing memorandum. A condition requiring release of financial records should only be countenanced if the defendant does not make restitution within a reasonable time of his release by a claim of inability to pay. At that time, the Court can modify the conditions of supervised release and require the defendant to release financial records. <u>United States v. Melendez-Santana</u>, id.

**G.    <u>Prohibition Against Loitering at "Other Places Where Children Under the Age of Eighteen Congregate"</u>**

The defendant has no objection to this provision in principle but points out that it is, again, a condition not part of the original plea agreement. At that time, the Government induced the defendant to plead guilty by telling him that it agreed that it would not seek any condition other than that he have "no unsupervised contact with minor children". Plea agreement at 2. Now, a far more extensive prohibition is

-11-

proposed after the defendant had irrevocably entered his guilty plea. Additionally, the defendant again raises the issue of vagueness as to the requirement that he not frequent "other places where children under the age of eighteen congregate". The defendant, and presumably the probation officer, have no idea what that language means. This last phrase should be eliminated from the condition and if, upon the defendant's release, the probation officer feels that he has a specific idea about what these "other places" might be, he can seek the modification of the conditions of release at that time.

Similarly, the defendant has no objection to a prohibition against him having contact with "convicted sex offenders". The defendant feels, however, that the probation officer should not have unbridled and unrestricted discretion to determine whom he considers "inappropriate" for further contact. This allows the probation officer to prohibit Mr. Spero from seeing his mother, father or brother because he may feel, in his mind, these people are "inappropriate". Once again, the provision is not only too vague to guide the probation officer, but provides far too much discretion to the probation officer. This provision should be eliminated and if, upon the defendant's release, there are specific people or a class of people the probation officer feels should be included with the "convicted sex offenders", then a modification with notice to the defendant and opportunity heard should be allowed.

-12-

II.    **The Court Should not Impose Supervised Release of Life**

The guidelines recommend a lifetime supervised release for a person who commits a violation of 18 U.S.C. §2423. This Court, of course, is not obligated to follow that recommendation which Congress and the Sentencing Commission have specifically not made mandatory. In <u>United States v. Mora</u>, the Second Circuit struck down as an abuse of discretion, a lifetime term of supervised release. <u>United States v. Mora</u>, 22 F3d 409 (2d Cir. 1994). In that case, the defendant had twice been convicted of major drug distribution convictions and committed the second offense within two years of his release from prison. <u>United States v. Mora</u> supra at 412. The District Court made a finding that the defendant did not learn from his "recent incarceration". Furthermore, the District Court knew that Mora was an illegal alien and the condition of supervised release was meaningless since he was going to be deported upon his release from confinement. Supra at 413, n.6. The Court of Appeals found that lifetime supervised release is "unreasonable" even in situations where the evidence "suggests the high probability of future recidivism". Supra at 414. The fact that a defendant is likely to recommit a crime is simply not a basis for imposition of lifetime supervised release. Supra at 414.

The Government argues for lifetime supervised release, because the Connecticut offense occurred only a few months after a similar crime was committed

-13-

by the defendant in New Jersey.  The Government is, thus, seeking triple or quadruple counting of the prior New Jersey conviction and offense conduct.  That New Jersey offense has resulted in a five point enhancement in the defendant's Base Offense Level and caused two points which he received for using a computer and lying to the victim about his age to be substantially lengthier enhancements.  eg. United States v. Sofsky, id at 129, n.1; §4B1.5(b)(1).  He also has received one criminal history point for this offense.  PSR at ¶31.

There is sufficient deterrence to assure the defendant will not commit a crime of this nature again.  First of all, the defendant is fully aware that another Federal conviction will result in a lifetime sentence.  18 U.S.C. §2426(a); 18 U.S.C. §3559(e). Secondly, no matter what conditions of supervised release the Court imposes, he will be micro managed like almost no other criminal defendant who has come before this Court.  Thirdly, the defendant will be in his fifties at the time of his release and has expressed an interest in doing no more than living alone in a small apartment for the balance of his life.  The Government refers to the defendant as a complete recidivist, but there is no indication the defendant engaged in any criminal activity until he was in his forties.  For all of these reasons, this Court should impose supervised release of no more than five years.

-14-

**III.  The New Jersey Jail Time Should be Credited Towards the Defendant's Sentence in this Court.**

In the defendant's first sentencing memorandum, he has set forth equitable reasons why this Court should give him credit for the time spent on the New Jersey conviction that has resulted in a five point enhancement in the sentence that this Court will impose.  The parties have both agreed to review §5G1.3 of the guidelines and, specifically Application Note 2, to determine its application to the defendant's situation.  Section (b) of that guideline now reads that "if Section (a) does not apply, and a term of imprisonment resulted from another offense that is <u>relevant conduct</u> to the instant offense of a conviction under the provision of subsections (a)(1), (a)(2) or Section (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter 2 (Offense Conduct) or Chapter 3 (Adjustments), the sentence for the instant offense shall be imposed as follows".  U.S.S.G. §5G1.3(b) as of November 2003.  The section then goes on to say that if the period will not be counted by the Bureau of Prisons, then the Court should run the sentences concurrently.  Essentially, since no sentence has yet been imposed in New Jersey, the Court should credit the defendant for the time which will, of course, be credited o the New Jersey sentence.

In 2004, the Sentencing Commission had changed this guideline.  The

-15-

example in Application Note 2(D) to §5G1.3 is appropos and should demonstrate to this Court that it is the intent of the Sentencing Commission to run the state sentence concurrently or to give the defendant credit for jail time that will run on the New Jersey state sentence.  This credit should simply be given by the Court in the written judgment and does not constitute a departure.   United States v. Fermin, 252 F3d 103, 107 (2d Cir. 2001), §5G1.3 App. Note 2(c).

The provision of "relevant conduct" cited in the present guideline did not exist at the time the defendant committed the instant offense.  This section prior to November 2003 simply required that the New Jersey offense had to be "fully taken into account" in the determination of the offense level for the instant offense.  The amendment was changed to its present language on November 1, 2003, Appendix C, Amendment 660.  By enhancing the federal level by five points, the New Jersey activity and its conviction was "fully taken into account" by the Court in imposing sentence and §5G1.3(b) should be applied to give the defendant pre-trial jail time.

## IV.    Restitution

On December 23, 2004, for the first time, the defendant, through his counsel, received bills generated for treatment of the victim.  The defendant has reviewed five bills for $80.  Thus, the amount of restitution for which the defendant is liable under the M.V.R.A is $400.  The defendant only comments that it is rather odd that these

demonstrating the amount of loss sustained by the victim shall rest upon the Government. 18 U.S.C. §3664(e).

Furthermore, it seems beyond dispute that the defendant has no income or assets to make restitution at this time. Because of the nature of the offense and his age when he will be released from incarceration strongly suggest the defendant will barely be able to eek out a living to support himself. Based upon these considerations and the criteria as set down in §3664(f)(1)(B), the Court should specify that only "nominal amounts of restitution should be made by the defendant on a monthly basis upon his release from incarceration". Supra. The Court should additionally find based upon the pre-sentence report that the economic circumstances of the defendant "do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments". 18 U.S.C. §3664(f)(3)(A)(B). To alleviate whatever need the defendant and his insurer may have for instant repayment, this Court can advise the victim or his father they may "assign the victim's interest in restitution payments to the Crime Victim's Fund". 18 U.S.C. §3664(g)(2).

V.    **The Court Should Sentence at the Low End of the Guidelines**

The defendant, because he is a sex offender, will always be placed in medium security under Bureau of Prison guidelines and never get into a low security

-18-

institution. The defendant had previously advised the Court in a memorandum and in the pre-sentence report of the community service he provided to the City of New York after the September 11, 2001, disaster. While the Court may not be able to downwardly depart because of this reason, it is an extremely important reason to impose sentence at the very low end of the range. Additionally, the defendant is a middle-aged man of small stature who has committed a crime which is considered the most serious in the prison hierarchy. Such individuals are "particularly vulnerable to victimization". United States v. Lara, 905 F2d 599 (2d Cir. 1990). The defendant has already been attacked because of the nature of his crime and because of his vulnerable condition. In order for the defendant to protect himself, he may be required to be in solitary or segregated confinement during protracted periods of his incarceration. Supra.

Finally, the defendant requests that for his safety and because of the programs that may be available, that the Court recommend to the Bureau of Prisons that he be confined at Ft. Devens in Massachusetts.

-19-

Respectfully submitted,

**DEFENDANT, MICHAEL SPERO**

By: _Michael S Cramer_ MJ3
Richard S. Cramer
449 Silas Deane Highway
Wethersfield, CT 06109
Tel. (860) 257-3500
Federal Bar No. ct00016
Email: cramer@snet.net

## CERTIFICATION

    THIS IS TO CERTIFY that a copy of the foregoing was hand-delivered this 5th day of January 2004 to:

John A. Danaher III
Assistant U. S. Attorney
450 Main Street
Hartford, CT 06103

and faxed to:

Joseph Montesi
U. S. Probation Officer
157 Church Street
New Haven, CT 06510
Fax (203) 773-2200

_Richard S Cramer_ MJ3
Richard S. Cramer

-20-