UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES | : |
| v. | : CRIMINAL NO. 3:03CR188(CFD) |
| MICHAEL G. SPERO | : JANUARY 6, 2005 |

**GOVERNMENT'S THIRD SUPPLEMENTAL SENTENCING MEMORANDUM**

I. Introduction

On January 5, 2005, the Government received the defendant's supplemental sentencing memorandum and responds, seriatim, to the issues raised in that memorandum.

II. Conditions of Supervised Release

A. Notice

The defendant contends that he should receive notice of any proposed special conditions of supervised release. The Government does not intend to advance any proposed conditions other than those which were discussed at the first sentencing hearing on December 23, 2004. Thus, the issue of "notice" appears to have been addressed.

B. Computer Use

The defendant suggests that in this case the computer was not the "essence of the crime." It is true that, in this matter, the "essence of the crime" consists of the actual and attempted sexual relations between the defendant and the minor victim. However, the defendant initiated contact with this victim, and made arrangements to travel to Connecticut to meet the victim, through the unique global access made possible by his use of the internet. As has been discussed, this defendant

indicated that he had been in internet communication with another minor in Connecticut in June 2003. The internet, unlike any other medium of communication, permits a sexual predator to easily conceal his true name, age and occupation (as did this defendant), all in order to portray himself as someone he is not. Thus, the proposed computer restrictions are "reasonably related" to the crime.

The defendant opposes the condition suggested by the Government, and instead, invites the Government to run "sting" operations in the future as a means of monitoring him. This suggestion is obviously far less effective than the Government's proposal, as evidenced by the fact that this case did not involve a true "sting" operation. This defendant completed his plan to have sexual relations with a minor before law enforcement could intervene. The only reason he was apprehended, at all, was not because he was found through a true "sting" operation, but rather because the victim reported the offense and permitted the FBI to assume the victim's identity online.

The defendant suggests that the Court is barred from imposing the condition requested by the Government under the theory that Sentencing Guideline Section 5D1.3(d)(7), recommending restrictions on computer use, became effective in November 2004, thus post-dating the offense. The defendant overlooks 18 U.S.C. § 3583(d), which authorizes the Court to impose, not only conditions consistent with sentencing guidelines, but also "any other condition it considers to be appropriate."[1]

Finally, the defendant suggests that a decision on the "computer use" question or "access to the defendant's computer" should be postponed until just prior to the defendant's release. Balon, supra, does not suggest such a course of action; further, there is no authority for the proposition that

---

[1] Indeed, the computer use limitations approved in United States v. Balon, 384 F.3d 38 (2d Cir. 2004)(decided September 20, 2004) predated the November 2004 guideline change. United States v. Smith, 354 F.3d 171 (2d Cir. 2003) does not preclude the imposition of the supervised release condition requested by the Government.

a district court can impose, for the first time, a supervised release condition long after sentence has been imposed. Indeed, the law is to the contrary. Fed. R. Crim. P. 35 and 36 (placing strict time limits on actions that the sentencing court can take after sentence is imposed).

The defendant protests that he should not be required to "consent to third-party disclosure to any employer, potential employer, community service site, or other interested party, as determined by the probation officer, of any computer related restrictions that are imposed." The Government agrees that this condition would not apply if the defendant engaged in work that did not involve computers. However, the proposed condition takes such a scenario into consideration, by including the provision "as determined by the probation officer."

The internet permits pedophiles to reach far beyond the local communities to which they were once confined. The computer is, as this Court is only too aware, the method of choice by which one sex offender after another solicits victims and arranges meetings with victims. United States v. Peterson, 248 F.3d 79 (2d Cir. 2001) does not support the defendant. The conditions at issue in Peterson were rejected, in large part, because they were sex-offender related conditions that had been imposed on a defendant who had been convicted of bank larceny. The district court had imposed the conditions because the defendant had a prior conviction for a sex offense. Here, unlike Peterson, the requested conditions are directly related to the dangers posed by this defendant.

### C. Polygraphs

The defendant opposes the requested special condition of supervised release pertaining to polygraphs at the discretion of the Office of Probation. The Government proposes that the Office of Probation, if it finds a need for a polygraph examination of the defendant when he is on release, can be directed to notify the Court prior to scheduling such an examination. Although such

notification does not appear to be required, it would address the defendant's concern that too much authority will have been delegated to the probation officer.

<u>United States v. Melendez-Santana,</u> 353 F.3d 93 (1st Cir. 2003), cited by the defendant, involved a situation in which a probation officer was given full authority to decide <u>whether</u> a defendant could be ordered to enter a treatment program.  The circuit court indicated it would have upheld an order that the defendant enter the program, with the probation officer having the discretion to determine how often the defendant must attend.  Here, the Government requests that the Court order the defendant to submit to polygraph examinations, and proposes only that the probation officer have the discretion to determine when such examinations would be appropriate.  Thus, this proposed condition is consistent with the principles expressed in <u>Melendez-Santana</u>.

The Government does not suggest that the defendant's supervised release be revoked, should he fail such an examination.  A polygraph examinations is a useful investigative tool, and a failed examination would put a probation officer on notice that further scrutiny of the defendant would be appropriate.

### D.  Search of the Defendant's Home and Workplace

The Government agrees that, if the Probation Officer were to be permitted to search the defendant's home or workplace while he is on release, it would be appropriate to limit such a search to those occasions on which the probation officer had reasonable suspicion that the defendant was engaged in illegal activity, including possible violation of any of the conditions of supervised release. The Government agreed, at the initial sentencing hearing, that such a search should be for the purpose of determining whether the defendant is in possession of "sexually explicit materials <u>involving minors</u>."

E. Restitution

The Government seeks an order that the defendant provide financial information to the probation officer in order to assist in ensuring that restitution is paid. The Government rejects the contention that it has "breached the plea agreement" by making such a request. The plea agreement sets forth proposed conditions of supervised release to which both parties agree. Nowhere does the plea agreement prohibit the Government from unilaterally seeking additional, appropriate conditions.

With regard to the Government's understanding, in March 2004, that restitution would be "minimal," that assertion was based upon the fact that the Government had not, up to that point, received any financial documents from the victim. Indeed, bills that the victim's family provided to the Office of Probation at the December 2004 sentencing hearing all reflect treatment from November 4, 2004 through December 9, 2004. Those bills reflect five separate mental health treatment visits at the rate of $80 per visit, for a total expense of $400. In addition, the victim's family estimates that it has expended $199.88 in travel to medical professionals. Finally, the victim's family now reports that it incurred $665 in expenses from March 23, 2003 through June 1, 2004[2]. Those bills all appear to constitute appropriate restitution under 18 U.S.C. § 3663(a) and so a total of $1,264.88 is the appropriate figure to be used in calculating restitution, together with any additional bills that the victim may have incurred since the last treatment session which took place on December 9, 2004.

Whether the foregoing figure is more than "minimal" is debatable. In the context of the

---

[2] The fact that fifty percent of the bills were covered by insurance should not affect the amount of restitution owed; it simply means that half of the $665 figure should be paid to the victim's family and the balance should be paid to the insurance company, after the victim is compensated. 18 U.S.C. 3664(j)(1).

5

defendant's reported earnings in 2002, $1,264.88 in restitution is, indeed, minimal.

### F. Loitering Near Children

The defendant protests the proposed prohibition against loitering in places where minors congregate. First, the defendant objects by claiming the plea agreement does not countenance this condition. The Government cannot locate in the plea agreement the language used by the defendant, as follows: "the Government induced the defendant to plead guilty by telling him <u>that it agreed that it would not seek any condition</u> . . ." other than a prohibition on unsupervised contact with minor children. Def. Mem. at 11 (emphasis added). The defendant supports this claim with a citation to page 2 of the plea agreement, but the emphasized language does not appear on that page, or anywhere else in the plea agreement. If the Government has made such a promise, it will abide by it, but the defendant has not accurately identified such a promise.

With regard to the defendant's confusion about identifying places where minors congregate, the Government's proposal provides specific examples. The defendant's claim that he has "no idea" as to what is meant by the phrase, "other places where children under the age of eighteen congregate" does not bode well for a successful completion of a term of supervised release. <u>See</u> <u>Balon</u>, 384 F.3d at 43 (conditions of probation need only give "'the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . .'" <u>quoting</u> <u>United States v. Gallo</u>, 20 F.3d 7, 12 (1st Cir. 1994).

### Conclusion

The defendant makes an additional claim, regarding credit for time served in New Jersey, that was addressed in the Government's December 29, 2004, memorandum. The Government asks the Court to find: that the Government has not breached the plea agreement and that the proposed

conditions of supervised release, as modified at the initial sentencing hearing and above, are appropriate, as is the requested restitution. Finally, the Government asks the Court to issue a sentence that sends an appropriate message to one who would: sexually abuse a child; be arrested and released on bail; within a few months travel to another state to sexually abuse another child and, thereafter, attempt to return to the second child to carry out further abuse.

        Respectfully submitted,

        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        JOHN A. DANAHER III
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. ct05101
        450 Main Street, Rm. 328
        Hartford, CT  06103
        (860) 947-1101


## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed this 6th day of January, 2005, to the following:

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109-2120

        _____
        JOHN A. DANAHER III
        ASSISTANT UNITED STATES ATTORNEY