UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:03CR188(CFD) |
| v. | : | |
| MICHAEL G. SPERO | : | SEPTEMBER 25, 2006 |

**GOVERNMENT'S MEMORANDUM RE: RESENTENCING**

This matter comes before this Court for resentencing pursuant to an order issued, as a mandate, by the United States Court of Appeals, dated September 14, 2005. United States of America v. Spero, Docket No. 05-0408-cr. This Court was directed, in that order, to "vacate the sentence and resentence appellant in conformity with [United States v.] Booker [125 S. Ct. 738 (2005)]."

## I. Procedural Background

Defendant Michael Spero, M.D., was arrested on June 25, 2003, in the District of Connecticut. He had traveled to Connecticut for the purpose of engaging in sexual relations with a fifteen-year old boy. On March 15, 2004, he pleaded guilty to a violation of 18 U.S.C. § 2423(b), acknowledging that he had traveled in interstate for the purpose of engaging in illicit sexual contact with a person under 18 years of age.

At the time Spero was arrested by federal authorities in June 2003, he was on bond from the State of New Jersey as the result of a February 2003 arrest for similar conduct in that state. In order

1

to resolve all charges against him, this Court acceded to Spero's request (and with the Government's agreement) that his federal sentencing be continued until he could be returned to New Jersey for the purpose of pleading guilty to the pending state charges and also for the purpose of being thereafter sentenced on those charges. Spero intended, by this maneuver, to seek to ask this Court to issue a sentence that would be concurrent to whatever sentence was rendered in New Jersey.

The defendant was released to the custody of New Jersey state authorities on June 17, 2004. On July 30, 2004, he pleaded guilty in New Jersey state court to a charge of second degree sexual assault. Spero had a sentencing hearing in New Jersey state court on October 29, 2004. However, the New Jersey court did not impose sentence on that date. Instead, the New Jersey court ruled that Spero would receive no more than five years of imprisonment, with sentence to be imposed in absentia and after Spero was sentenced by the United States District Court in Connecticut. The New Jersey court stated, further, that the New Jersey sentence, when it became effective, would be concurrent to the federal sentence.

Spero was returned to the District of Connecticut on December 1, 2004. On January 7, 2005, Spero was sentenced to 99 months of imprisonment, to be followed by a five year period of supervised release. The district court also ordered that Spero be tested for sexually transmitted diseases. Judgment was entered on January 14, 2005. The defendant filed a timely notice of appeal on January 19, 2005.

On April 22, 2005, the Government moved the Second Circuit for a remand in light of *United States v. Booker*, 125 S. Ct. 738 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). That motion was granted on September 14, 2005.

## II. Factual Background

In May 2003, a fifteen-year-old Connecticut boy met the defendant over the internet. The defendant was portraying himself, over the internet, as a twenty-three-year-old medical student named "Drew." The defendant offered to travel to Connecticut to meet with the victim and, although the victim knew that such a meeting might lead to sexual conduct, the victim did not specifically agree to engage in sexual acts with "Drew." Presentence Report ("PSR,") at ¶¶ 8-9.

On June 10, 2003, the victim met the defendant near the high school where the victim was enrolled. The defendant then drove the victim to the Grantmoor Motor Lodge in Newington, Connecticut, and expressed an interest in having sexual relations with the victim. The victim declined, initially, but eventually agreed to permit the defendant to engage in anal sexual relations. After falling asleep, the victim awoke to find the defendant on top of him and again engaging in anal sexual relations. The victim asked the defendant to stop, and the defendant did so. On June 11, 2003, at another location, the defendant engaged in oral sexual relations with the victim. Thereafter, the defendant returned to New Jersey, and the victim, late on the evening of June 11, 2003, or in the early morning hours of June 12, 2003, appeared at Bristol Hospital stating that he had been the victim of a sexual assault. PSR ¶¶ 7, 10-11.

On June 17, 2003, an undercover Special Agent of the Federal Bureau of Investigation ("UC") assumed the victim's identity and engaged in internet communications with the defendant. After several days of communications - communications which made it abundantly clear that the defendant wished to engage in additional sexual relations with the victim - the defendant scheduled another meeting in Connecticut. In the course of those internet communications, the defendant advised the

UC that he had met someone else from Connecticut who was "fourteen or fifteen" and that the defendant had met the latter individual over the internet. PSR ¶¶ 12-14.

Thereafter, the defendant traveled to Connecticut, where he was arrested on June 25, 2003. He subsequently pleaded guilty to the charges described above. In the course of his plea, the defendant acknowledged that he traveled from New Jersey to Connecticut to engage in sexual relations with a fifteen-year-old boy. He also acknowledged that he had represented to the boy that he was a twenty-three-year-old medical student when, in fact, he was a forty-one-year-old doctor. The defendant also acknowledged that he anally penetrated the boy. PSR ¶ 16.

### III. The Initial Sentencing

On December 23, 2004, this Court held a sentencing hearing, at which time the defendant asked the Court, *inter alia*, to credit him for five and one-half months that he spent in custody in New Jersey prior to being sentenced in Connecticut. 12/23/04 Transcript ("Tr.") at 43-46. The victim's father addressed the court at that hearing and expressed his concern that he did not know whether the defendant had been tested for sexually transmitted diseases. 12/23/04 Tr. at 54. The Court continued the hearing to January 7, 2005.

On January 7, 2005, this Court recognized that the defendant had moved for a credit, or alternatively a downward departure, based upon U.S.S.G. § 5G1.3, in order to obtain a reduction for the time spent in presentence custody in New Jersey. 1/7/05 Tr. at 15.. The Court also considered the request, initially raised by the victim's father, that the defendant be tested for sexually transmitted diseases. Id. at 21. The defendant objected to the testing, citing his "severe hatred of needles" and contended that there was no need for such testing. Id.

This Court then explained the reasoning behind the sentence that it intended to impose,

making a specific point of the fact that the sentence took into consideration all of the factors required by 18 U.S.C. § 3553.  1/7/05 Tr. at 42-45.  On the question of credit for time served in New Jersey, this Court declined to depart in order to give the defendant such credit.  This Court stated that "[e]ven if such a departure were authorized under the amendments to the guidelines, I do not believe it is warranted in this case as Mr. Spero has not yet been sentenced by the New Jersey courts . . . ." .  This Court continued, noting that even if the New Jersey court did not eventually credit Spero for the time he spent in custody in that state, "the circumstances here do not warrant such a departure."  The Court then expressly declined to exercise its discretion to depart on the basis requested.  The Court then indicated, in the alternative, that even if the issue were not construed as a potential departure, "the facts of this case do not justify a credit under U.S.S.G. § 5G1.3(b) for any period of incarceration." 1/7/05 Tr. at 45-46.

The Court specifically took into consideration, in fashioning the sentence, the fact that the defendant claimed to have provided assistance in helping the victims of the 9/11 tragedy.  Id. at 47. This Court ordered "an STD test to be taken of Mr. Spero."  Id. at 50.

Although the Court indicated that it would sentence the defendant in the middle of the sentencing guideline range (97-121 months), the sentence imposed was near the bottom of the range, i.e, 99 months.  The Court also ordered a term of supervised release, various standard and special conditions, restitution, and a special assessment. Id. at 47-50.[1]

---

[1] None of these aspects of the sentence were challenged in the defendant's subsequent appeal, nor has the defendant challenged any of these elements of the sentencing in his most recent sentencing memorandum.  The Government asks that all of these aspects of the original sentence be reinstated, for the reasons that led them to be imposed initially, when the defendant is resentenced.

The defendant appealed his sentence, contesting the Court's decision not to credit him for time served in New Jersey, and the order that he submit to STD testing. The former claim has been reiterated in the defendant's memorandum of September 15, 2006, at 5. Both of these claims are moot. In August 2005, the Bureau of Prisons notified the district court that the tests had been completed, and that the tests were negative. The defendant, in his most recent memorandum, acknowledges that the testing was completed. Second, the Bureau of Prisons has advised the Government that it did, in fact, credit the defendant for time served in New Jersey. The attached document (Government's Exhibit 1) makes clear that the defendant received Bureau of Prisons credit for his pre-conviction incarceration, running from the day he was first arrested on June 25, 2003, through and including the day before he was sentenced, January 6, 2005.

This Court did not indicate in the course of the initial sentencing that it wished to impose a sentence below (or above) the applicable guideline range. Nor did this Court indicate that it was precluded from issuing a non-guidelines sentence because the guidelines were (at that time) mandatory. Indeed, the fact that the Court did not sentence this defendant at the very bottom (or top) of the applicable range suggests that the Court did not wish to impose a non-guidelines sentence. Similarly, the Court did not indicate at any time that it wished to depart downward for any reason. On the contrary, the Court made it clear that even if it had the discretion to depart downward on any basis, it would not choose to do so. 1/7/06 Tr. at 46 ("I choose not to exercise my discretion and will not depart from the sentencing guidelines on either of the bases raised by the defendant, *nor on any other basis*." (Emphasis added)).

## IV. New Claims

In a memorandum dated September 15, 2006, the defendant made a number of positions to which the Government wishes to respond.[2]  Those positions are as follows:

1.  The defendant, citing a 1997 research paper, claims that sex offenders, as a group, are less likely to recidivate than the general population of criminal defendants. Defendant's Memorandum at 7-8.  This fact, he claims, entitles him to a sentence of less than 97 months.

2.  The defendant seeks a reduced sentence because he had a blood test and because he did not infect the victim with a sexually transmitted disease.

3.  The defendant claims to have assisted in recovery operations in New York City after the 9/11 attack.

4.  The defendant will likely not work again as a physician and he has no record of professional misconduct.

5.  The defendant has strong family support.

The Government responds as follows:

**1. Likelihood of Recidivism**

The defendant claims that he is not likely to offend again, and offers a research study to support his position.  The study cited by the defendant applies to sex offenders in general.

---

[2]  The defendant does not challenge the prior sentencing guideline range calculation of 97-121 months. Defendant's Memorandum at 3.  The Government agrees with this position.  Second, the defendant seeks credit for five months of incarceration in New Jersey, awaiting resolution of his pending state case.  As has been made clear, the Bureau of Prisons has already issued full credit for all pretrial detention between the date of arrest and the date of sentencing by this Court.  This claim should be denied as moot.  See Government's Exhibit 1.

Defendant's Exhibit ("DX") A at 348. The study itself cautioned that its recidivism estimates are based on diverse methods, follow-up periods, and must take into account the fact that many sexual offenses remain undetected. Id. At 351. The study also noted that the risk of recidivism is increased for those with prior sexual offenses, those who had victimized strangers, those who had an extrafamilial victim, and those who had selected male victims. Id. Every one of the latter factors exists in this case. The study continues: "Sexual interest in children . . . was the single strongest predictor . . . . Related predictors included . . . sexual interest in boys as well as any deviant sexual preference . . . ." Id. Again, this warning applies in this case. Thus, the defendant's exhibit actually serves to give the Court more, rather than less, concern that this defendant is likely to recidivate. There should be no reduction in sentence based on DX A.

In any case, the general study proffered by the defendant is of marginal utility in assessing the character of the individual before the Court. This Court has had ample opportunity - more than in many cases - to assess this defendant and to determine whether this defendant presents a risk of recidivism.

### 2. The Defendant's Blood Test

The defendant seeks consideration because he "complied" with HIV testing even though he believed it to be unnecessary. He contends that his compliance should be considered an expression of remorse. Defendant's Memorandum at 8-9. He claims credit because he "allowed the test results to be made known." Id. at 12. This, he claims, is one of his "good works."[3] Finally, the defendant claims, this Court should consider as a "changed circumstance" the fact that it is now known that the

---

[3] The defendant's own Exhibit B, at 2, makes clear that the test involved is a simple blood test.

defendant, in anally penetrating the victim, did not infect the boy with a fatal (or any other) sexually transmitted disease. Id. at 14.

The defendant "complied" with HIV testing because this Court ordered that the testing be done. Complying with a legitimate order of this Court is hardly grounds for a reduced sentence. Anyone who comes before the United States District Court is expected to comply with lawful orders of the Court. Indeed, it must be recognized that this defendant did not undergo testing willingly at all. He protested against it at sentencing and he raised it as one of two issues on appeal. Finally, although infecting a child victim with a sexually transmitted disease might be a basis for an upward departure, that fact that such a disease did not pass to the victim is hardly a basis for a reduced sentence. This claim should be rejected.

### 3. The Defendant's Work in New York City

The defendant contends that he should be credited for his work in New York City after the attacks of 9/11. He claims that he has since developed physical and emotional symptoms attributable to that experience, and he cites a recent study, attached as DX C, in support of his claim. This situation, he claims, should entitle him to a downward departure.

The defendant's claims are, at this point, the product of self-reporting and speculation. This Court has had ample opportunity to observe the defendant's tendency to engage in histrionics and hypochondriacal behavior, including his first appearance after his arrest, at which time he suggested that he might be having a heart attack. The defendant's own exhibit notes, not only that not all workers at ground zero are suffering from respiratory problems, but that the highest incidence of such

problems are found in those who arrived on September 11, 2001. Half of those studied were engulfed in the building-collapse dust cloud, and the average duration of exposure was "171 days." DX C at 13. However, the defendant's exhibit F, a letter from his parents, indicates that he began his volunteer efforts on September 12th, that he initially worked inside a high school, and that he left after one week. The defendant's parents have the respirator mask that was issued to him.

The defendant's claims, in summary, are speculative and not supported by his own exhibits. Moreover, this Court, despite the lack of concrete evidence offered by the defendant, already chose to credit him for his claim that he had worked at the 9/11 site. 1/7/05 Tr. at 47. Having already received credit for his efforts, the defendant is not entitled to a further reduction in his sentence.

**4. The Impact on the Defendant's Prospects of Future Employment**

The defendant seeks a downward departure because, as a result of his conviction, he will probably not work again as a physician and he will register as a sex offender. Def. Mem. at 13. However, such consequences are a well-known, fully understood effect of conviction for a crime. Indeed, the existence of such consequences is a significant deterrent to criminal activity. The consequences of the defendant's conviction, including reporting the conviction to potential employers and the fact that the defendant may have to register as a sex offender, are topics that were specifically included in the plea agreement in the "Collateral Consequences" discussion (Plea Agreement at 6). The defendant, himself, advised the Court that he has no intention of seeking employment in the medical field. 12/23/04 Tr. at 51. Finally, socio-economic status is a forbidden basis for a downward departure. United States v. Sprei, 145 F.3d 528, 534 (2d Cir. 1998).

The fact that the defendant has no record of professional misconduct is a non-sequitur. At the

initial sentencing this Court did not presume that the defendant had any such record of misconduct. The fact that misconduct reports have not surfaced does not support a claim that the defendant's sentence should now be reduced.

## Discussion of the Law

As the Supreme Court held in *United States v. Booker*, 125 S. Ct. 738, 764 (2005), the Sentencing Reform Act continues to provide for appeals by both defendants and the government from sentences imposed by the district court, "irrespective of whether the trial judge sentences within or outside the Guidelines range." Under *Booker*, when a sentence is challenged on appeal, the court of appeals will review the sentence to determine whether it is "unreasonable." *Id*. The Court did not define "reasonableness," but stated that the factors listed in 18 U.S.C. 3553(a) "will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id*. at 765. This standard of review was expanded upon in United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006).

In Fernandez, the Second Circuit summarized the task to be carried out at sentencing: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the calculated Guidelines range; and (3) impose[] a reasonable sentence." Id. at 26. In the course of reviewing a sentence for reasonableness, the circuit court will consider the procedures employed in arriving at the sentence. The standard of review is "akin to review for abuse of discretion." Id. at 27. Therefore, the circuit court will be looking at three factors: did the sentencing court exceed the bounds of allowable discretion, commit an error of law in exercising discretion, or make a clearly erroneous finding of fact? Id. The circuit court continued, "We recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably

11

within the broad range of sentences that would be reasonable in the particular circumstances." Id.

Although the district court is required to consider all of the 18 U.S.C. § 3553(a) factors, the weight to be afforded any given argument made pursuant to one of the § 3553(a) factors is a matter "firmly committed to the discretion of the sentencing judge and is beyond our review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." Id. at 32. Fernandez suggests that it is desirable, although not necessary mandatory, for the sentencing court to acknowledge all of the sentencing claims raised by the defendant, so that the record makes clear that the sentencing court considered, even if it did not accept, such arguments. See Fernandez, 443 F.3d at 28-32.

**5. The Defendant's Family Support**

The defendant refers, at page 13 of his memorandum, to the fact that his parents still support him. The defendant also suggests that he should receive a downward departure so that he can support his parents. The defendant, prior to his conviction, does not appear to have supported his parents. His financial assets are extremely limited, and his financial prospects will be more limited in view of his conviction. The fact that his parents support him is admirable and reflects well on them; it is not a basis for a downward departure.

**Conclusion**

For all of the foregoing reasons, the Government urges the Court to impose the same sentence that it imposed on January 7, 2005. There was no error in that sentence and there are no new circumstances sufficient to warrant a reduced sentence.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


JOHN A. DANAHER III
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct05101
450 Main Street, Rm. 328
Hartford, CT  06103
(860) 947-1101

CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed this 25th day of September, 2006, to the following:

Cheryl J. Sturm, Esq.
387 Ring Road
Chadds Ford, PA 19317

Richard S. Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109-2120

_____
JOHN A. DANAHER III
ASSISTANT UNITED STATES ATTORNEY

.