IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : 03CR 188 (CFD) |
| | : |
| | : |
| V. | : |
| | : |
| **MICHAEL SPERO** | : |
| Defendant | |

DEFENDANT'S REPLY TO GOVERNMENT'S
MEMORANDUM RE:RESENTENCING

**I.  THE SENTENCE SHOULD BE ADJUSTED UNDER U.S.S.G. SECTION 5G1.3(B)**

The Court should adjust the sentence imposed under U.S.S.G. Section 5G1.3(B) because the conduct for which Mr. Spero was imprisoned while in the custody of the State of New Jersey was taken into consideration in calculating the offense level for the federal offense.  New Jersey did not give him credit for that time.  The Bureau of Prisons frequently recalculates sentences, particularly when there is a resentencing.  To leave no doubt that Mr. Spero will receive credit for the 5 months spent in the custody of the State of New Jersey awaiting resolution of the state case, this Court should make the adjustment under U.S.S.G. Section 5G1.3(B).

**II.  REPLY TO THE GOVERNMENT'S RESPONSE TO THE CLAIMS ON WHICH MR. SPERO REQUESTS THAT THE COURT CONSIDER A SENTENCE BELOW THE GUIDELINE RANGE OF 97 TO 121 MONTHS.**

### A. LIKELIHOOD OF RECIDIVISM

The statistics reported in Hanson, R.K. & Bussiere, M.T. (1998), Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology,* 66 , 348-362 (Exhibit A to Defendant's Sentencing Memorandum), establish that there is no foundation for a conclusion that individuals convicted of a sex offense are highly likely to recidivate. ["The present findings contradict the popular view that sexual offenders inevitably reoffend." Hanson, supra. at 357]. The study reveals that statistically, the likelihood of recidivism for sex offenders is generally less than that of the overall criminal population. It would be in error to conclude that a lengthy period of incarceration is the only means to control the actions an individual such as Mr. Spero, who is highly educated, did not engage in criminal activity until 40 years of age, did not engage in force, pled guilty and expresses remorse. A sentence of less than 97 months would achieve the goals of 3553(a)(1), (a)(2) and (a)(4)(2).

### B. MR. SPERO SUBJECTED HIMSELF TO INVASIVE HIV TESTING FOR THE PURPOSE OF SATISFYING THE CONCERNS OF THIE VICTIM, ALTHOUGH THE CONCERS WERE WITHOUT LEGITIMATE FOUNDATION.

The Government's Re-Sentencing Memorandum reads at page 8 that "[Mr. Spero] contends that his compliance should be considered an expression of remorse." The Government's Memorandum does not address the fact that at the original sentencing <u>counsel for the government</u> said that Mr. Spero's subjecting himself to such testing would be " the representation of remorse and respect for the family." (Tr. 1/7/05, p. 22). Now that Mr. Spero has undergone the testing, expressing remorse and respect for the family in doing so, the government suggests that his actions deserve no consideration. The government's original assessment that undergoing the tests shows remorse and respect

2

for the family is the correct assessment. It should be considered in evaluating the "history and characteristics" of Mr. Spero. It represents a change in circumstances since the original sentence. A sentence of less than 97 months is justified.

### C. MR. SPERO IS ENTITLED TO A SENTENCE BELOW THE GUIDELINES FOR GOOD WORKS.

1. MR. SPERO'S VOLUNTEER EFFORTS AT GROUND ZERO

Mr. Spero's exhibits do not undermine his claim that Mr. Spero (1) volunteered as an early responder at ground zero and (2) his volunteer work at ground zero put him at risk for developing serious medical problems. The government's suggestion that there was no dust or debris within the immediate vicinity of the World Trade Center collapse <u>one</u> day after the collapse[1] defies our collective memories of the event and scientific reports. Pages 4-5 of Exhibit C to Mr. Spero's Sentencing Memorandum reads:

> The collapse of the 'twin towers' (WTC 1 and WTC 2) and then of a third building (WTC 7) produced an enormous dust cloud containing thousands of tons of coarse and fine particulate matter (PM), cement dust, glass fibers, **asbestos,** lead, hydrochloric acid, polychlorinated biphenyls (PCBs), organochlorine pesticides, and polychlorinated dioxins and furans …. The high content of pulverized cement made the dust highly caustic…
>
> Dust and debris gradually settled, and rains on **9/14** further diminished the intensity of outdoor ambient dust exposure. However, rubble removal operations repeatedly reaerosolized the dust, leading to continuing intermittent exposure for many months…. (Exhibit C, pp. 4-5, emphasis supplied)

The study also noted that potential health problems such as malignant mesothelioma may not be evident until 30 to 50 years after exposure to asbestos. (Exhibit C, p. 19). Moreover, the government has presented no medical authority to support its claim that Mr. Spero engages in "hyopchondrical behavior". Government's Memorandum, p. 9.

---

[1] Mr. Sepro volunteered at "Ground Zero" on September 12, 2001.

3

A sentence below the guidelines would recognize Mr. Spero's volunteer work to assist the community. In addition, it would allow Mr. Spero earlier access to intensive follow up and medical treatment.

**D. CONSIDERATION OF THE FACT THAT THE SENTENCING GUIDELINES DO NOT TAKE INTO ACCOUNT THE COLLATERAL CONSEQUENCE MR. SPERO HAS SUFFERED IN THAT HE WILL UNLIKELY AGAIN PRACTICE MEDICINE IS NOT "FORBIDDEN" AFTER BOOKER.**

The fact that Mr. Spero was aware of many of the collateral consequences of his plea does not change the fact that there are significant collateral consequences that attach to the conviction of a physician that do not attach to all defendants.

The Government's suggestion that post-**Booker**, there is any factor that is "forbidden" to this court in fashioning a reasonable sentence finds no support in **Booker.** In fashioning a "reasonable" sentence, the Court may consider any of the factors set forth above and in the recent sentencing memorandum submitted on Mr. Spero's behalf, or a combination of those factors. The government's suggestion is contrary to the law.

**E. MR. SPERO'S PARENTS ARE AGES 71 AND 76. THEY ARE LIKELY TO REQUIRE ASSISTANCE FROM MR. SPERO AS THEY AGE THAT IS NOT LIMITED TO FINANCIAL ASSISTANCE**

Mr. Spereo is presently sentenced to 99 months. If that sentence remains in effect, it is unlikely that he will be able to supply any meaningful support in terms of rendering care and emotional support for his aging parents. The support Mr. Spero proposes is not limited to financial support. Of the three children, one is deceased and one is married with a family of his own to care for. Mr. Spero is the child who would be

4

available to care for his parents. The court may consider this factor in fashioning a "reasonable" sentence.

### III. CONCLUSION

For all of the reasons set forth above, and in the previously submitted memorandum in aid of sentencing, a sentence below 97 months would be "reasonable" and would be more than adequate to punish the instant offense and satisfy all of the factors the Court must consider under 18 U.S.C. Section 3553(a). In addition to the period of incarceration, Mr. Spero will never practice medicine again. He will be a registered sex offender. The grounds for departure set forth above, separately and in combination, justify a sentence of substantially less than 97 months.

The remaining terms of the Judgment in a Criminal Case should be unchanged.

Dated: September 29, 2006                                Respectfully submitted,

                                                         <u>Cheryl J. Sturm</u>
                                                         Cheryl J. Sturm
                                                         Attorney at Law
                                                         387 Ring Road
                                                         Chadds Ford, Pa. 19317
                                                         484-771-2000
                                                         484-771-2008(fax)

                                                         Ct. Bar No. 12801


### CERTIFICATE OF SERVICE

Cheryl J. Sturm, Attorney at Law, hereby certifies that on the 29th day of 2006, she caused a copy of the within Memorandum in Aid of Sentencing and Exhibits to be served upon opposing counsel by United States Mail, first class postage pre-paid and addressed as follows:

5

John A. Danaher, III, AUSA
U.S. Attorney's Office
450 Main Street, Room 328
Hartford, CT 06103

Dated: September 29, 2006                    <u>Cheryl J. Sturm</u>
                                             Cheryl J. Sturm
                                             Attorney at Law

                                             Ct. Bar No.  12801